**GIBSON PRODUCTS COMPANY OF LAUREL, INC.**

v.

**GIBSON PRODUCTS COMPANY OF HAMMOND, INC. et al.**

Civ. A. No. 78–3536.

United States District Court, E. D. Louisiana.

Oct. 30, 1980.

Herbert W. Christenberry, Jr. and Warren A. Forstall, Jr., New Orleans, La., for plaintiff.

Leland D. Montgomery and M. Hampton Carver, New Orleans, La., for defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

## Findings of Fact

1. Jurisdiction is based on diversity of citizenship and 28 U.S.C. § 1332. Plaintiff, Gibson Products Company of Laurel, Inc. ("Laurel," hereinafter), is a Mississippi corporation, with its principal place of business in Mississippi. Defendant, Gibson Products Company of Hammond, Inc. ("Hammond," hereinafter), is a Louisiana corporation, with its principal place of business in Louisiana.

2. On May 21, 1974, plaintiff entered into a management contract with defendant, in which plaintiff agreed to manage defendant's store in Hammond, Louisiana for a fee of six (6%) percent of the gross revenues and receipts of the store. (Plaintiff's Exhibit No. 1, Management Contract, Article III.)

3. At a meeting between the parties early in 1975, Laurel agreed to partially postpone collection of the payment of the management fee provided for in the contract. Accordingly, beginning in April, 1975, Laurel was actually paid one–half of its management fee in cash. The other half accrued as an account payable to plaintiff by defendant. The funds made available from this deferred payment were used to reduce the debt of Hammond to Hibernia National Bank.

4. The Management Contract was terminated on or about August 1, 1978.

5. Under Article I § 1 of the contract, Laurel's supervisors were required to prepare periodic reports. These reports were not provided after a decision was made by Laurel that they were not very useful. Instead, the supervisors of Laurel met weekly to discuss the management operations of their stores. After reviewing Laurel's aggregate obligations under the contract, it is apparent that Laurel's decision not to provide these reports did not amount to a breach of its obligations under the contract.

6. Laurel generally performed its buying obligations under the contract, including advice and consultation in displays and department layouts.

7. Laurel also prepared monthly Profit and Loss Statements, monthly Advertising Expense Reports, and monthly Sales, Salary and Payroll Budgets which were sent to the Hammond store, although they were not personally supplied to Harvey Windes as President of Hammond.

8. Laurel did essentially perform its obligations under the Management Contract entered into on May 21, 1974.

9. Defendant is indebted to plaintiff for the sum of $85,879.40 for pastdue managerial fees, as shown on the books of Hammond that were maintained by Laurel. (Defendant's Exhibits D–1, p. 5, and D–2, p. 3.)

10. Under the terms of the Management Contract, the plaintiff had full authority and responsibility to pay the invoices of the defendant for the goods and merchandise placed in the Hammond store. (Article I § 5.) The plaintiff is entitled to reimbursement for the invoices paid on behalf of the defendant during the term of the contract.

11. Accordingly, defendant is indebted to plaintiff for the sum of $23,276.60 for invoices paid for goods and merchandise sent to and used at the Hammond store during the term of the contract. Said sum is comprised as follows:

| | |
|---|---|
| Balance due August 1, 1978 | $ 29,606.66 |
| Less credits issued after August 1, 1978 | 6,330.06 |
| Net balance due August 1, 1978 | $ 23,276.60. |

(Testimony of Jimmie O'Neil, Certified Public Accountant, Plaintiff's Exhibit 12.)

12. Laurel has no claims under the Management Contract for any invoices it paid after the contract was terminated.

13. Hammond is not entitled to recover on its counterclaim for any losses it may have sustained during Laurel's management. Laurel has shown that it essentially performed its management obligations under the contract.

## Conclusions of Law

1. The contract in this case involves mutual covenants. LSA–C.C. arts. 1768, 1770. Plaintiff promised to provide management services for defendant's store. Defendant,

in turn, promised to pay plaintiff a management fee of 6% of the gross revenues and receipts of Hammond.

2. Under Louisiana law, a plaintiff who sues for breach of a contract must show that he performed his obligations under the contract. LSA–C.C. art. 1913. The evidence supports the conclusion that Laurel carried out its obligations under the Management Contract. Thus, Laurel is entitled to receive full payment of its accrued management fees under the contract, totaling $85,879.40. Laurel is also entitled to receive the net balance due August 1, 1978, for invoices paid for goods and merchandise sent to and used at the Hammond store as provided for in the contract. This figure is computed to be $23,276.60.

Plaintiff's counsel shall prepare and submit a judgment consistent with these findings.